George A. Davis, Appellee, v. Theatre Amusement Company, Appellant.

Gen. No. 45,994.

Opinion filed October 7, 1953. Rehearing denied October 30, 1953. Released for publication December 14, 1953.

B. F. MARTIN, and RICHARD KEOGH, both of Chicago, for appellant; THOMAS C. ANGERSTEIN, GEORGE W. ANGERSTEIN, and CHARLES T. SHANNER, all of Chicago, of counsel.

JOSEPH BARBERA, of Chicago, for appellee.

MR. PRESIDING JUSTICE FEINBERG delivered the opinion of the court.

This action is for personal injuries which plaintiff alleges he sustained through the negligence of the defendant in the movie theater owned and operated by defendant. A trial with a jury resulted in a verdict for $18,000 in favor of plaintiff. Defendant's motions for a new trial and for judgment notwithstanding the verdict were overruled. Judgment was entered on the verdict, and defendant appeals.

The evidence discloses that plaintiff entered defendant's theater as a patron about 4 o'clock in the afternoon; that he proceeded in the first aisle left of the center aisle; that as he walked down the aisle the lights were off; that there were no lights on the left-hand aisle and there were no lights on in the center aisle.

Cullen, a witness for plaintiff, testified that he entered the theater on the day in question at about the

same hour and went to a seat in the center aisle; that there were no lights on at that time; that the aisle was dark, and he could not see anything but he could feel popcorn boxes and paper trash on the floor; that in the lobby of the theater they sold popcorn, candy and ice cream bars; that as far as he looked down the aisle he could not see any lights, and that the floor was dark and the center aisle was dark.

It appears from the evidence that after plaintiff had been watching the pictures on the screen for about an hour, he developed a "splitting headache," had to go to the men's washroom, and that he left his seat and proceeded up the center aisle toward the door. He said it was dark, and that there were no lights on in the center aisle; that when he reached a point near the door he stepped on something with his left foot which "felt like a sucker stick, because it was round"; that his foot rolled back, and he fell forward; that he did not see the object which caused him to fall; that the area where he fell was dark; that he fell halfway into the lobby, and his chin struck the floor; that he was taken to a doctor in the building, who found plaintiff splattered with blood; and that he treated him. X-rays, later taken, disclosed a complete fracture of the left jaw extending through the radius and another fracture on the right.

It further appears from the evidence that the jaw had to be wired; that at the time of the trial there was present a malocclusion between the upper and lower teeth as well as a shift of the jaw to the right and left on opening and closing the mouth; that the malocclusion was approximately one-quarter of an inch deviation; that there was a limitation of motion of approximately one-half inch; and that such condition, according to some of the medical testimony, was permanent.

There was a sharp conflict in the evidence as to whether the aisle in question was dimly lit or was so dark that one could not observe the floor in the aisle and area where the accident occurred. This issue of fact was one for the jury to determine and has an important bearing upon the rule of liability of the defendant.

Defendant argues that a moving picture house necessarily operates in partial darkness, otherwise there would be no picture, therefore the lack of bright illumination cannot *per se* constitute negligence, and relies on *Rosston v. Sullivan,* 278 Mass. 31; *Falk v. Stanley Fabian Corp.,* 115 N. J. L. 141, and *Beck v. Stanley Company of America,* 355 Pa. 608, and similar cases. The cases cited are not applicable.

Defendant's evidence disclosed that the center aisle had lights on the end seats bordering on the aisle, beginning with the row nearest the entrance from the lobby and on each fourth row toward the front; that these lights are arm lights located on the aisle side of the seat about halfway down to the floor and equipped with 15-watt bulbs, which burn out from time to time and have to be replaced. The clear inference from this evidence is that these lights are intended to shed some light upon the floor of the aisle, even if the light is only dim. The inference is quite clear and reasonable that defendant recognized that a patron is entitled to enough light to be able to observe the floor of the aisle.

█ If the jury believed from the conflicting evidence appearing in this record that the aisle was dark because the arm lights referred to were not burning, and some object on the floor caused plaintiff's foot to slip, resulting in his falling, the jury would be justified in finding defendant guilty of negligence. This factual situation distinguishes the cases relied upon by defendant, because in those cases there was an absence of

claim of complete darkness. Therefore the plaintiffs in those cases were properly required to prove that the foreign matter on the floor existed long enough to have enabled the defendant, by the exercise of reasonable care, to discover the condition which could reasonably be expected to cause an accident.

██ If defendant in the instant case allowed the aisle in question to be in total darkness, an inherently dangerous condition was created. The law charges defendant, under such circumstances, with the duty to reasonably foresee that some patrons are prone to throw debris and objects in the aisle of a movie theater, which may cause another to slip and fall. *Gibbons v. Balaban & Katz Corp.*, 242 Ill. App. 524, followed in *Crowley v. Bugg*, 292 Ill. App. 210. To charge a defendant with such a duty is not in conflict with the holding in *Dire v. Balaban and Katz, Inc.*, 241 Ill. App. 199, cited by defendant.

██ The denial of defendant's motion for a new trial upon the ground that the verdict is against the manifest weight of the evidence, and newly discovered evidence, is assigned as error. The controverted facts created an issue for the jury to determine, and we cannot say upon this record that their verdict is against the manifest weight of the evidence.

The showing in the motion for a new trial as to newly discovered evidence was to the effect that John Hudson with one John Chennault accompanied plaintiff to the theater on the day of the occurrence in question; that Hudson and Chennault assisted plaintiff after the fall; that both were intimate acquaintances of plaintiff; that upon the trial plaintiff, on cross-examination, was asked where Chennault and Hudson were then and could be found; that plaintiff testified that Chennault was in the Armed Forces in Paris, France, when plaintiff knew that he was then serving a five-year sentence

in the Cook County Jail in a narcotic case; that Chennault knew plaintiff's witness Cullen all his life and did not see Cullen at the time of the accident when he claims he assisted plaintiff from the floor; that as to Hudson, contrary to plaintiff's testimony that he did not know where he was, plaintiff knew that Hudson was living in Robbins, Illinois, and had seen him frequently immediately preceding the trial.

██ The showing made by defendant upon the ground of newly discovered evidence does not meet the well settled rule that a party is not entitled to a new trial for newly discovered evidence where such evidence is not of a controlling and conclusive character bearing upon the accident in question, where it is merely cumulative (*Crane Co. v. Parker*, 304 Ill. 331; *Kimber v. Burns*, 253 Ill. 343) and where there is no showing of due diligence.

██ In *People v. Dabney*, 315 Ill. 320, the court said (p. 327):

"Applications for new trial on the ground of newly discovered evidence are not looked upon with favor by courts but such applications are to be subjected to close scrutiny. The burden is on the applicant to rebut the presumption that the verdict is correct and to show that there has been no lack of due diligence."

We have examined instructions No. 4, 5 and 8 given for plaintiff, about which defendant complains, and we find no merit in defendant's criticism of these instructions. These instructions were applicable to the particular facts disclosed by the evidence.

We think defendant has had a fair trial, and the judgment of the circuit court is affirmed.

*Affirmed.*

KILEY and LEWE, JJ., concur.