[Cite as *Williams v. Strand Theatre & Cultural Arts Assn., Inc.*, 2019-Ohio-95.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| BETTY C. WILLIAMS, | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellant | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| STRAND THEATRE & CULTURAL ARTS | : | Case No. 18 CAE 06 0042 |
| ASSOCIATION, INC., | : | |
| | : | |
| Defendant - Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Delaware County
Court of Common Pleas, Case No.
17-CV-C-06-0368

JUDGMENT:         Affirmed

DATE OF JUDGMENT:      January 14, 2019

APPEARANCES:

For Plaintiff-Appellant        For Defendant-Appellee

T. JEFFREY BEAUSAY       BRUCE A. CURRY
Beausay Law Firm, LLC       TRENT M. THACKER
PO Box 21747          Curry, Roby & Mulvey Co., LLC
Columbus, Ohio 43221-0747    30 Northwoods Blvd., Suite 300
               Columbus, Ohio 43235

*Baldwin, J.*

{¶1}   Plaintiff-appellant Betty C. Williams appeals from the May 17, 2018 Judgment Entry of the Delaware County Court of Common Pleas granting the Motion for Summary Judgment filed by defendant-appellee Strand Theatre and Cultural Arts Association, Inc.

## STATEMENT OF THE FACTS AND CASE

{¶2}   On June 12, 2015, appellant Betty C. Williams was at the Strand Theatre to see a movie with her daughter.  At the time, she was 91 years old. After her daughter purchased popcorn, the two proceeded to go upstairs to their seats from the concession area. Their seats were located in the Strand's second floor theater. At the time, appellant's daughter was carrying the popcorn. During her deposition, appellant testified that they started going up the steps to get to their seats and that "at the top I took a step that was there and started tumbling." Appellant's Deposition at 13.  Appellant further testified that she "was up the steps and in the dark because they didn't have any lights and when I reached the top of the steps, I stepped down to take – going to the seats and that's when I fell." Appellant's Deposition at 14. Appellant struck her head on the floor, sustaining a large subdural hematoma.

{¶3}   The following testimony was adduced when appellant was asked whether there was a step there that she had missed**:.** Appellant's Deposition at 14-15.

{¶4}   A: Uh-huh.

{¶5}   Q. Okay. When did you realize that step was there?

{¶6}   A: Well, I've been to the Strand many times so I had to have known that it was there. But they changed it.

I stepped down and there was no steps and so I just tumbled the rest of the way. I tumbled just like you would—like a paper doll.

{¶7}   Appellant testified that she had been to the Strand Theatre "many times" and had been in that particular theater in the balcony. Appellant's Deposition at 15. She indicated that she had been there probably a month or two before and had traversed the same steps before. When asked if at some point prior to June 12, 2015, she had known that there were steps there, she stated that "I had to have." Appellant's Deposition at 16.

{¶8}   Appellant testified that it was so dark in the theater that you could not see your hand in front of your face and that she realized that it was dark when she walked into the theater. Appellant did not have a flashlight on her at the time and did not ask anyone in the theater to help her get to her seat. When asked why she fell, she testified that she fell because it was dark and she could not see.

{¶9}   On June 9, 2017, appellant filed a complaint sounding in negligence against appellee Strand Theatre and Cultural Arts Association, Inc. Appellee filed an answer on June 16, 2017 and a Motion for Summary Judgment on February 5, 2018. Appellant filed a memorandum in opposition to the Motion for Summary Judgment on February 15, 2018 and appellee filed a reply on February 19, 2018.

{¶10}  Pursuant to a Judgment Entry filed on May 17, 2018, the trial court granted the Motion for Summary Judgment. The trial court found that appellee did not owe a duty to appellant because the darkness was an open and obvious danger.

{¶11} Appellant now appeals, raising the following assignments of error on appeal:

**{¶12}** "I. THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT. THE TRIAL COURT BASED ITS DECISION ON AN ERRONEOUS DESCRIPTION OF THE FACTS AND FAILED TO USE THE APPLICABLE LEGAL PRINCIPLES IN ANALYZING THE CASE; THIS CASE SHOULD BE ANALYZED UNDER THE "STEP-IN THE DARK" RULE."

**{¶13}** "II. ALTHOUGH THE CASE SHOULD NOT BE ANALYZED UNDER THE "OPEN AND OBVIOUS "DOCTRINE, THE HAZARD IN QUESTION WAS NOT "OPEN AND OBVIOUS." IT MAKES NO SENSE TO DECLARE A PITCH DARK MOVIE THEATRE TO BE "OPEN AND OBVIOUS"; THE HAZARD IN QUESTION WAS THE OPPOSITE: IT WAS CLOSED AND DARK. WHETHER AN UNLAWFULLY DARK MOVIE THEATRE WAS AN "OPEN AND OBVIOUS" HAZARD IS A QUESTION OF FACT."

I, II

**{¶14}** Appellant, in her two assignments of error, argues that the trial court erred in granting appellee's Motion for Summary Judgment. We disagree.

**{¶15}** Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said Civ.R. 56 was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 448, 1996-Ohio-211, 663 N.E.2d 639:

> Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly

in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

**{¶16}** As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987).

**{¶17}** As explained by this court in *Leech v. Schumaker,* 5th Dist. Richland No. 15CA56, 2015-Ohio-4444, ¶ 13:

It is well established the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265(1986). The standard for granting summary judgment is delineated in *Dresher v. Burt* (1996), 75 Ohio St.3d 280 at 293: "* * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving

party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150.

{¶18} As is stated above, appellant, in her complaint, alleged that appellee was negligent.  To establish a negligence claim, a plaintiff must demonstrate the existence of a duty, a breach of that duty, and injury or damages proximately caused by the breach. See *Menifee v. Ohio Welding Prod., Inc.* , 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984).

{¶19} In a premises liability case, the relationship between the owner or occupier of the premises and the injured party determines the duty owed. *Gladon v. Greater Cleveland Regional Transit Auth.,* 75 Ohio St.3d 312, 315, 1996–Ohio–137, 662 N.E.2d 287). Ohio adheres to the common-law classifications of invitee, licensee, and trespasser in cases of premises liability. *Boydston v. Norfolk S. Corp.,* 73 Ohio App.3d 727, 733, 598 N.E.2d 171, 175 (4th Dist.1991).

{¶20} In this case, it is undisputed that appellant was a business invitee of appellee. An invitee is defined as a person who rightfully enters and remains on the

premises of another at the express or implied invitation of the owner and for a purpose beneficial to the owner. *Broka v. Cornell's IGA Foodliner Inc.,* 5th Dist. Richland No. 12CA100, 2013-Ohio-2506, 2013 WL 3147687, ¶ 20 citing *Gladon, supra* at 315.

{¶21} The owner or occupier of the premises owes the invitee a duty to exercise ordinary care to maintain its premises in a reasonably safe condition, such that its invitees will not unreasonably or unnecessarily be exposed to danger. *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 480 N.E.2d 474 (1985). A premises owner must warn its invitees of latent or concealed dangers if the owner knows or has reason to know of the hidden dangers. *Id.* However, a premises owner is not an insurer of its invitees' safety against all forms of accident that may happen. *Id.* Invitees are expected to take reasonable precautions to avoid dangers that are patent or obvious. *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968).

### Open and Obvious

{¶22} In *Armstrong v. Best Buy Company, Inc.*, the Ohio Supreme Court found a premises owner owes no duty to persons entering the premises regarding dangers that are open and obvious. 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088.

{¶23} The rationale of the open and obvious doctrine is that the open and obvious nature of the hazard itself serves as a warning, so that owners reasonably may expect their invitees to discover the hazard and take appropriate measures to protect themselves against it. *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 1992-Ohio-42, 597 N.E.2d 504. Therefore, when a danger is open and obvious, a premises owner owes no duty of care to individuals lawfully on the premises. *Armstrong, supra.* When applicable, the open and obvious doctrine obviates the duty to warn and acts as a complete bar to any

negligence claim. *Aycock v. Sandy Valley Church of God*, 5th Dist. Tuscarawas No. 2006AP090054, 2008-Ohio-105.

**{¶24}** The law uses an objective, not subjective, standard when determining whether a danger is open and obvious. *Freeman v. Value City Dept. Store*, 5th Dist. Stark No. 2010 CA 00034, 2010-Ohio-4634 at paragraph 17. The fact that a particular appellant himself or herself is not aware of the hazard is not dispositive of the issue. *Id.* It is the objective, reasonable person that must find the danger is not obvious or apparent. *Id.* The determinative issue is whether the condition is observable. *Aycock v. Sandy Valley Church of God*, 5th Dist. Tuscarawas No. 2006AP090054, 2008-Ohio-105, 2008 WL 115829.

**{¶25}** Ohio courts have consistently recognized that darkness is an open and obvious condition that should not be disregarded. *McDonald v. Marbella Restaurant*, 8th Dist. Cuyahoga No. 89810, 2008-Ohio-3667, ¶ 33. "Darkness is always a warning of danger, and for one's own protection it may not be disregarded." *Id.*, quoting *Jeswald v. Hutt*, 15 Ohio St.2d 224, 239 N.E.2d 37 (1968), paragraph three of the syllabus. Under this rule, Ohio courts have applied the open and obvious doctrine and denied recovery where a plaintiff seeks to recover against a property owner for injuries sustained as a result of stepping into darkness and sustaining injuries as a result of another object or danger. *Id.*, citing *Rezac v. Cuyahoga Falls Concerts, Inc.*, 9th Dist. Summit No. 23313, 2007-Ohio-703; *Leonard v. Modene & Assoc., Inc.*, 6th Dist. Wood No. WD-05-085, 2006-Ohio-5471.

**{¶26}** In *Pass v. Cinemark, USA, Inc.,* 5th Dist. Stark No.2003CA00276, 2004-Ohio-5191, a movie theater patron who was injured when she fell on stairs in a theater

brought a negligence action against the theater. The patron argued that because the sconce lights had not come up after the movie ended, she was not able to discern that there was another step between where the handrail ended and where the landing began. In affirming the judgment of the trial court granting summary judgment to the theater, this Court held, in relevant part, as follows at paragraphs 16-17:

> At the end of the movie, appellant elected to leave her seat, go down the stairs and exit the theatre while the credits were showing and before the houselights were scheduled to come to full lighting level. Thus, appellant was aware of the darkness of the theatre. Even if the lights failed to rise to the proper level during the credits, appellant was aware of the darkness and chose to exit her seat.

> Upon review, we find that any hazard or danger was open and obvious. We conclude that summary judgment was appropriate.

**{¶27}** See also *Draper v. Centrum Landmark Theater*, 8th Dist. No. 72000, 1997 WL 321504 (June 12, 1992).

**{¶28}** Appellant, in the case sub judice, argues that appellee should be held liable since the Strand does not meet the Ohio Building Code's minimum lighting requirements for movie theatres.

**{¶29}** However, in *Lang v. Holly Hill Motel, Inc.,* 122 Ohio St.3d 120, 2009–Ohio–2495, 909 N.E.2d 120, ¶ 21, the Supreme Court of Ohio stated as follows:

> While a violation of the Building Code may serve as strong evidence that the condition at issue was dangerous and that the landowner breached the attendant duty of care by not rectifying the problem, the violation is mere

evidence of negligence and does not raise an irrebuttable presumption of it. As is the case with all other methods of proving negligence, the defendant may challenge the plaintiff's case with applicable defenses, such as the open-and-obvious doctrine. The plaintiff can avoid such defenses only with a per se finding of negligence, which we declined to extend to this context in *Chambers.*

**{¶30}** The *Lang* court at syllabus held as follows: "The open-and-obvious doctrine may be asserted as a defense to a claim of liability arising from a violation of the Ohio Basic Building Code."

**{¶31}** Because, in the case sub judice, the darkness was an open and obvious condition, we find that appellee had no duty to warn or protect against it. Having found that the open-and-obvious doctrine applies, we need not consider the issue of contributory negligence posed by appellant's arguments regarding the step-in-the-dark rule. See *Rezac,* supra, ¶ 26, citing *Nageotte v. Cafaro Co.,* 160 Ohio App.3d 702, 828 N.E.2d 683, 2005-Ohio-2098, ¶ 29 (open and obvious is determinative of the landowner's duty and the question of comparative negligence is never reached if the landowner owes no duty). We find that the darkness was open and obvious and that the trial court did not err in granting summary judgment in favor of appellee.

**{¶32}** Appellant's two assignments of error are, therefore, overruled.

{¶33} Accordingly, the judgment of the Delaware County Court of Common Pleas is affirmed.

By: Baldwin, J.

Delaney, J. concur.

Gwin, P.J. concurs
Separately.

*Gwin, P.J., concurring*

**{¶34}** I concur in the majority's decision upholding the trial court's decision. I write separately because I do not believe the "open and obvious" doctrine is the only analysis.

**{¶35}** A movie theater by its nature invites people into the darkness. Conversely, a person entering a movie theater expects it to be dark. As one court has noted, the theater owner's duty to its patrons is explained as follows,

> The theatre owner's need for sufficient darkness to screen a movie or provide artistic lighting effects for a live performance, as well as the need for sufficient light to enable patrons to find or leave their seats safely during a show, are relevant factors for a jury to consider in evaluating what constitutes reasonable care. *Drumwright v. North Carolina Theatres, Inc.*, 228 N.C. 325, 328, 45 S.E.2d 379 (1947). *Olsen v. Edgerly,* 106 Ind.App. 223, 231, 18 N.E.2d 937 (1939). *Cf. Davis v. Theatre Amusement Co.*, 351 Ill.App. 517, 520, 115 N.E.2d 915 (1953) (presence of aisle lights permits inference that light is needed for safety of persons); *Schneider v. Carnegie Hall Corp.,* 54 App.Div.2d 897, 387 N.Y.S.2d 900 (N.Y.1976) (local ordinance governs theatre lighting); *Collins v. Ector Theater*, 497 S.W.2d 496 (Tex.Civ.App.1973) (local ordinance requires aisle lights).

*Upham v. Chateau De Ville Theater, Inc.*, 380 Mass. 350, 354-355, 430 N.E.2d 384(1980). In addition,

> Factors [such] as the plaintiff's age, the lack of ushers, or the lack of warnings to patrons to be careful going to and from their seats, as well as the fact that the defendant had more than five weeks' notice that a group of

elderly persons would attend the theatre that evening, are factors bearing on the reasonableness of the defendant's conduct. The jurors may also consider whether or not an obvious, dangerous condition existed.

*Upham v. Chateau De Ville Theater, Inc.*, 380 Mass. at 355-356; 403 N.E.2d at 388.

**{¶36}** "Unlike the open-and-obvious doctrine, the step-in-the-dark rule is an affirmative defense. Also unlike that doctrine, the rule does not relate to the duty element of a negligence claim, but instead relates to the cause of the plaintiff's injury." *Hissong v. Miller,* 186 Ohio App.3d 345, 2010-Ohio-961, 927 N.E.2d 1161(2nd Dist.), ¶37.

**{¶37}** As the Ohio Supreme Court noted in a case decided under the contributory negligence standard noted,

The step-in-the-dark rule merely raises an inference of the lack of prudence and ordinary care on the part of a plaintiff. If conflicting evidence exists as to the intentional nature of the step into the dark, the lighting conditions and degree of darkness, the nature and appearance of the premises, or other circumstances exist tending to disprove a voluntary, deliberate step into unknown darkness, then clearly an inference of contributory negligence does not arise. Evidence of this nature presents a factual question for determination by the jury. *Rothfuss, supra*, 34 Ohio St.2d 176, 297 N.E.2d 105; *Painesville Utopia Theatre Co. v. Lautermilch* (1928), 118 Ohio St. 167, 160 N.E. 683; *Chardon Lakes Inn Co.*, *supra*, 56 Ohio App. 40, 10 N.E.2d 9; *Plotkin v. Meeks* (1936),131 Ohio St. 493, 3 N.E.2d 404.

*Possin v. A.B.C. Motor Court Hotel, Inc.,* 45 Ohio St.2d 271, 276-277, 344 N.E.2d 334(1976). In *Jeswald v. Hutt*, 15 Ohio St.2d 224, 239 N.E.2d 37(1968), the Supreme Court of Ohio held that darkness was always a warning of danger and, therefore, a plaintiff will be considered contributorily negligent for any injury claims which occur due to darkness. Id. at 227, 239 N.E.2d 37. The *Jeswald* holding and the *Possin* holding were issued when a plaintiff was completely barred from recovery if his or her own *contributory negligence* was a factor. However, subsequent to these holdings, Ohio's General Assembly replaced the aforementioned standard of contributory negligence with a comparative negligence standard. Thus, currently, a plaintiff's claim of negligence would still be actionable despite such party's partial comparative negligence. *Lines v. Ashtabula Area City School,* 11th Dist. No. 2003-A-0062, 2004-Ohio-4535, ¶33; *Miller v. Wayman,* 11th Dist. No. 2012-G-3057, 2012-Ohio-5598, ¶43.

**{¶38}** In the case at bar, one could conclude the darkness is not necessarily dangerous, but common or expected because it is a movie theater. That is, a person's step into darkness may be reasonable based on the facts and circumstances of the case: "In some places one expects to find darkness, so darkness is not always unusual and not always a warning of danger." *Hissong*, 2010–Ohio–961, ¶ 39, 186 Ohio App.3d 345, 927 N.E.2d 1161. "A person does not act negligently by failing to look for danger where she has no reason to expect it, or where she has reason not to expect it." (Emphasis sic.) Id. *Miller v. Wayman,* 11th Dist. No. 2012-G-3057, 2012-Ohio05598, ¶ 46.

**{¶39}** However, Appellant testified in her deposition as follows,

Yes, I was up the steps and in the dark because they didn't have any lights on and when I reached the top of the steps, I stepped down to take -- going to the seats and that's when I fell.  (Depos. at 14).

\* \* \*

There was no step there when I stepped.  (Depos. at 20).

\* \* \*

Q. When you looked down did you see the step?

A.  Yes.  I saw a step and I stepped on it.  I thought I saw a step and stepped on it and I was just tumbling and tumbling trying to stop myself. (Depos. at 26).

**{¶40}**  It does not appear the Appellant encountered a "defect" but "missed a step," allegedly because of the darkness.  Thus, even if she was not negligent in entering the darkness of the theater, Appellant points to no evidence that a defect in the theater caused her to fall.  There is no evidence that a step was missing or that the steps were in any way defective.  There is no evidence that a special aspect of the step made it unreasonably dangerous.  Upon realizing the extent of the darkness, Appellant did not ask for assistance to her seat from her daughter or anyone else.  Appellant was familiar with the theater and the steps to the balcony area.

**{¶41}**  Accordingly, because I would find that no evidence of a defect in the theater caused Appellant's fall, I concur in the majority's disposition of Appellant's two assignments of error.